UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE BOSTON & MAINE CORP., | * | |
| | * | Civil Action No. 70-00250-JLT |
| Debtor. | * | |

MEMORANDUM

November 19, 2013

TAURO, J.

I.   Introduction

On September 27, 2013, this court entered an Order and Memorandum ruling that its 1983 Consummation Order does not bar the United States' claim to recover environmental cleanup costs under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). This court accordingly allowed the Government's Motion for Leave to Pursue Claim [#2]. Boston & Maine Corporation ("BMC") files this motion pursuant to Federal Rules of Civil Procedure 59(e) and 60(a). BMC requests that this court alter its judgment to reflect that (1) the stay on the United States' related CERCLA action[1] shall remain in place and (2) BMC may engage in discovery related to other defenses it wishes to raise. For the reasons stated below, BMC's Motion to Alter or Amend, or to Correct, the Judgment [#57] is DENIED.

II.   Background

The facts underlying this case have been well rehearsed in this court's prior rulings[2] and this court assumes familiarity with them. A brief overview of this case's procedural history will suffice. On June 17, 1983, this court entered a Consummation Order in the bankruptcy

---

[1] No. 13-cv-10087 (D. Mass.).

[2] See Mem. Sept. 27, 2013 [#54]; Mem. Sept. 27, 2013 [#56].

proceedings of BMC. The Consummation Order discharged BMC from bankruptcy and entered an injunction barring the filing of pre-petition claims against BMC.

On January 14, 2013, the United States filed a motion seeking leave to pursue a CERCLA claim against BMC. Essentially, the United States asked this court for an order ruling that the 1983 Consummation Order did not bar its claim. The United States simultaneously filed its CERCLA action, which has been stayed pending the outcome of this case. On January 28, 2013, BMC filed a motion requesting an extension of time to respond to the United States' <u>Motion for Leave</u> and to define the scope of the proceeding. BMC sought discovery on four defenses it wished to raise against the United States' <u>Motion for Leave</u>: (1) the 1983 Consummation Order; (2) the CERCLA statute of limitations; (3) the doctrine of laches; and (4) considerations of unreasonable delay.[3] The United States opposed BMC's motion. While the United States agreed that BMC should be permitted to conduct limited discovery on the issue of whether the Consummation Order barred its claim, it contended that CERCLA's statute of limitations was an issue to be addressed if and when the CERCLA action proceeded and that the doctrine of laches was inapplicable.[4]

After additional briefing, this court held a hearing on discovery issues on June 12, 2013. This court allowed in part and denied in part BMC's <u>Motion to Define Scope of Proceeding</u>. This court permitted BMC to engage in limited discovery on the issue of whether the Consummation Order barred the United States' claim. This court also denied without prejudice BMC's request to engage in discovery on its other defenses.[5]

---

[3] <u>See</u> Mem. Supp. Mot. Extension Time Respond & Define Scope Proceeding [#17].

[4] <u>See</u> Opp'n Mot. Define Scope Proceeding [#19].

[5] Order June 13, 2013 [#27].

On August 9, 2013, BMC filed its Opposition to the United States' Motion for Leave. Additional briefing followed. On August 29, 2013, this court held a hearing on the merits of the United States' Motion for Leave. Following the August 29 hearing, the Parties submitted additional briefing on the admissibility of statements made by the United States' expert witness. This court held a hearing on the evidentiary issue on September 24, 2013. On September 27, 2013, this court entered an order admitting the statements of the United States' expert witness and a second order ruling on the merits of the United States' Motion for Leave. This court found that the United States Army ("Army") did not have actual or constructive knowledge of its CERCLA claim at the time the Consummation Order was entered in 1983 and accordingly allowed the United States' Motion for Leave. BMC filed the present motion on October 24, 2013.

III. Discussion

BMC requests that this court alter or amend its judgment on the United States' Motion for Leave to provisionally allow the motion pending discovery and resolution of the remaining three defenses BMC wishes to assert. If the remaining defenses may be raised in this action, then granting BMC targeted discovery on each would be proper. For the reasons discussed below, however, none of the remaining defenses on which BMC seeks discovery are applicable to the United States' Motion for Leave.

A. CERCLA's Statute of Limitations

BMC first seeks discovery on the issue of whether the three-year statute of limitations applicable to CERCLA "removal" actions bars the United States' Motion for Leave. At the outset, this court observes that the United States does not contend that BMC may never raise a statute of limitations defense. The United States does, however, argue that this case is not the

appropriate action in which to address that issue. Instead, the United States maintains that BMC can and should raise its statute of limitations defense in the separate CERCLA action.

CERCLA's statute of limitations is, of course, applicable to CERCLA actions, not to the United States' Motion for Leave in this bankruptcy action. Nevertheless, BMC contends that the doctrine of "equity follows the law" requires this court to consider the CERCLA limitations period. BMC begins with the valid observation that a "bankruptcy court [is] a court of equity."[6] BMC then argues that "there is nothing equitable in allowing parties to circumvent [legal time-bars] by formally filing in equity."[7] Because the United States is seeking an equitable remedy "in aid of" its legal rights under CERCLA, argues BMC, its Motion for Leave is time-barred if its CERCLA action is time-barred. The gist of BMC's argument is that the United States is attempting to circumvent the CERCLA limitations period and force BMC to defend a legal action that is time-barred.

The First Circuit has held that "where legal and equitable claims coexist, equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy."[8] This is a sensible rule: it "prevent[s] plaintiffs from making a mockery of the statute of limitations by the simple expedient of creative labeling—[such as by] styling an action as one for declaratory relief rather than for damages."[9] Where a party cannot obtain concurrent relief by proceeding in either equity or law, however, a statute of limitations will not bar equitable relief.[10]

---

[6] In re Coastal Cable T.V., Inc., 709 F.2d 762, 764 (1983).

[7] Mem. Supp. Mot. Alter, Amend, or Correct [#58], 4.

[8] Gilbert v. City of Cambridge, 932 F.2d 51, 57 (1st Cir. 1991).

[9] Id.

[10] In re Valente, 360 F.3d 256, 266 n.7 (1st Cir. 2004) (declining to apply the doctrine of "equity follows the law" where a concurrent legal remedy was unavailable under the Uniform Fraudulent

Here, the United States is not seeking an equitable remedy that it could otherwise obtain in law under CERCLA. A review of what the United States is seeking in each action illustrates this point. In this action, the United States is simply seeking a determination as to whether this court's Consummation Order bars it from initiating its CERCLA action under the standard articulated in <u>Boston & Maine Corp. v. MBTA</u>.[11] Success here merely allows the United States to initiate its CERCLA action. The United States is still required to prove that it is entitled to relief and BMC can still assert its limitations defense. In its CERCLA action, on the other hand, the United States seeks to recover approximately $1,600,000 in environmental cleanup costs for BMC is allegedly liable. The United States cannot recover that money in this action. The United States thus is not seeking an end run around the CERCLA statute of limitations by filing in equity.

Relying on the Supreme Court's decision in <u>Russell v. Todd</u>,[12] however, BMC argues that plaintiffs are additionally prohibited from using equity "in aid of a legal right . . . if the legal right is barred by the local statute of limitations."[13] According to BMC, this is an important addition because "a statute of limitations can be circumvented just as easily by seeking relief in a separate action 'in aid of' a legal action as by seeking both forms of relief concurrently in the

---

Transfer Act); <u>see also</u> <u>Cassell v. Taylor</u>, 243 F.2d 259, 261 (D.C. Cir. 1957) ("In those instances *where the court has concurrent jurisdiction to grant either equitable or legal relief in the enforcement of the asserted obligation*, equity follows the law and the equitable remedy will be withheld if the local statute of limitations would bar the concurrent legal remedy." (emphasis added)).

[11] 587 F.3d 89 (1st Cir. 2009).

[12] 309 U.S. 280 (1940).

[13] <u>Id.</u> at 289.

same action."[14] If a concurrent legal remedy would be barred, so too should "an inferior remedy sought 'in aid of' [a] time-barred legal remedy."[15]

BMC attempts to wring too much from the language of Russell. Russell itself involved an equitable claim for which no comparable relief was available at law. Moreover, the cases Russell cited in support appear to have been primarily concerned with situations in which a plaintiff attempted to assert equitable claims nearly identical to legal claims that were barred by a statute of limitations. BMC does not cite to a single case in which a court has interpreted Russell to apply as broadly as BMC seeks to apply it here. The only relevant First Circuit decision to rely on Russell cited it in support of the proposition that equity follows the law where *concurrent* remedies are available.[16] In short, stretching the rule of Russell to apply to the situation here is not supported by the rationale underlying that rule. Indeed, the United States has conceded on multiple occasions that it is not trying to skirt the CERCLA limitations period and that BMC may raise its defense in the appropriate action. Because the United States is not seeking an equitable remedy concurrent with that available in its CERCLA action, the CERCLA statute of limitations is not a valid defense to this action.

    B.    The Doctrine of Laches

BMC next argues that the doctrine of laches is an independent ground barring the United States' Motion for Leave. The United States opposes discovery related to a laches defense on several grounds, including the unavailability of laches as a matter of law.

---

[14] Mem. Supp. Mot. Alter, Amend, or Correct [#58], 5.

[15] Mem. Supp. Mot. Alter, Amend, or Correct [#58], 6.

[16] See Gilbert, 932 F.2d at 57-58.

The Supreme Court has long held that "laches or neglect of duty on the part of officers of the government is no defense to a suit by [the government] to enforce a public right or to protect a public interest."[17] Although not squarely conceding this point, BMC does not argue with it.[18] Instead, BMC argues that the United States cannot benefit from this venerable rule because, in its actions related to this case, the Army was not acting in a sovereign capacity. Rather than acting in a regulatory capacity, the Army was merely acting as a private land owner. BMC then attempts to rely on CERCLA case law holding that "the government is liable in the same manner and to the same extent as any non-governmental entity."[19] And, the argument goes, if a private party were to seek equity in a bankruptcy proceeding such as this in order to recover cleanup costs, it would be subject to a laches defense. Finally, BMC relies on the Supreme Court's decision in Clearfield Trust Co. v. United States, which found laches to be a valid defense against the Government when it acts as a drawee of commercial paper.[20] Clearfield relied, in turn, on Cooke v. United States, which held that when the United States "comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there."[21]

---

[17] See Utah Power & Light Co. v. United States, 243 U.S. 389, 409 (1917); Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 878 (1995) ("[L]aches ordinarily cannot be raised as a defense against the government in an action brought to enforce a public right or protect a public interest."). A long line of authority confirms this principle.

[18] See Mem. Supp. Mot. Alter, Amend, or Correct [#58], 7.

[19] FMC Corp. v. U.S. Dep't of Commerce, 29 F.3d 833, 840 (3d Cir. 1994) (en banc) (stating further that "when the government engages in activities that *would* make a private party liable *if* the private party engaged in those types of activities, then the government is also liable").

[20] 318 U.S. 363, 369 (1943).

[21] 91 U.S. 389, 398 (1875).

The United States counters that, pursuant to the Federal Facilities Agreement covering Fort Devens, the Army is acting as the "lead agency" responsible for "investigating, selecting, and implementing" the former base's cleanup.[22] This, the United States argues, is sovereign action aimed at protecting human health and the environment. The United States also relies upon cases barring the use of a laches defense against the Government in its capacity as a land owner, even if the defense would be available in a similar suit brought by a private party.[23] And since the Army here is taking action as a landowner to recover costs associated with cleaning up environmental waste on a property it holds for the public benefit, laches may not be raised as a defense.

This court finds the Government's position more persuasive. As explained, a long line of authority bars the use of laches against the Government when acting in a sovereign capacity or to protect its lands. Here, the Army is acting as lead agency in the cleanup operation at Fort Devens. Regardless of whether the Army owns the property, its actions are taken for public benefit. BMC's reliance upon CERCLA cases holding that the United States is *liable* under the statute to the same extent that private parties are liable is misguided. This authority merely establishes that when a government entity is responsible for environmental contamination, it is liable on the same terms as everyone else – these cases say nothing about the availability of a

---

[22] Opp'n Mot. Alter, Amend, Correct Judgment [#59], 10.

[23] United States v. California, 332 U.S. 19, 40 (1947) ("The Government, which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property."); Utah Power, 243 U.S. at 409 ("A suit by the United States to enforce and maintain its policy respecting lands which it holds in trust for all the people stands upon a different plane in this and some other respects from the ordinary private suit to regain the title to real property or to remove a cloud from it."); United States v. Insley, 130 U.S. 263, 265-66 (1889).

laches defense in a bankruptcy action.[24] Finally, the Supreme Court's decision in Clearfield does not compel a different result. Clearfield recognized a narrow exception to the rule that the United States is not subject to laches when it acts as a drawee of commercial paper. But in this case, the Government has not "come[] down from its position of sovereignty, and enter[ed] the domain of commerce."[25] BMC cites no cases expanding Clearfield beyond the commercial context.[26] Because the United States is acting in its sovereign capacity as landowner for the benefit of the public, BMC may not assert a laches defense in this action and discovery on that issue is unwarranted.

    C.    Considerations of Undue Delay

Finally, BMC seeks to engage in discovery on the issue of whether considerations of undue delay might bar the United States' Motion for Leave. BMC cites a single case on this issue. In Texaco P.R., the Puerto Rico Department of Consumer Affairs sought restitution from gasoline wholesalers based on profits they had earned while a court-ordered injunction was in effect. The First Circuit held that the equitable defense of laches is distinct from an equitable

---

[24] Moreover, and without wading too deeply into the merits of the CERCLA suit, it would appear that laches is not available as a defense against the type of claim the United States seeks to pursue. See United States v. Kramer, 757 F. Supp. 397, 424 (D.N.J. 1991) ("The majority of courts . . . have rejected equitable defenses to a section 107(a) cost recovery action as inconsistent with the explicit language of the statute and congressional intent.").

[25] Cooke, 91 U.S. at 398.

[26] The cases BMC cites in which bankruptcy courts have allowed laches defenses against the United States are unpersuasive. The court in In re Sharpe was unclear as to whether its decision was based entirely on laches, and the authority the court cited suggests it was not. 164 B.R. 753, 756 (Bankr. W.D. Mo. 1993). In V.I. Bureau of Internal Revenue v. St. Croix Hotel Corp., the timeliness of the motion to reopen was "the most important consideration" in deciding the issue at bar and involved a government agency apparently well known for its tardiness. 60 B.R. 412, 413-14 (D.V.I. 1986) (excoriating the Virgin Islands Attorney General's Office). In any event, these cases involve significantly different issues and factual scenarios than those present here.

9

Case 1:70-cv-00250-JLT   Document 67   Filed 11/19/13   Page 10 of 11

factor, such as undue delay.[27] Because they are distinct, a court deciding whether to award an equitable remedy to the United States may consider undue delay in its balancing of the equities even though the defense of laches is inapplicable.[28]

While this court may certainly consider the Government's undue delay in fashioning an equitable remedy in an appropriate case, this case does not present such an occasion. Texaco P.R. was a case in which a government entity sought restitution. As the First Circuit observed, "[b]ecause restitution is a creature of equity, a claimant can prevail only by showing that it will offend 'equity and good conscience' if the other party is permitted to retain the disputed funds."[29] In other words, a plaintiff is not entitled to restitution unless the equitable balance tips in his favor. A court considering whether to award restitution must therefore balance the equities in the case before it.

Here, by contrast, the United States simply seeks a determination as to whether the 1983 Consummation Order bars the filing of its CERCLA claim. Whether or not the United States' CERCLA claim was discharged by the Consummation Order turns upon whether the United States had a claim or contingent claim at the time of BMC's discharge.[30] Making this determination necessitates inquiry into the Army's knowledge at the time of the discharge.[31] Determining whether a claim or contingent claim existed as of 1983 does not, however, require any sort of equitable balancing. There was thus no occasion for this court to balance potential

---

[27] Texaco P.R., 30 F.3d at 878.

[28] See id. at 878-79.

[29] Id. at 873 (quoting Atl. Coast R.R. Co. v. Florida, 295 U.S. 301, 309 (1935)).

[30] MBTA, 587 F.3d at 100.

[31] Id. at 100-01.

undue delay against anything else. This is not a case where the United States is seeking to "reopen" BMC's bankruptcy proceeding. BMC has not cited a single case in which a court determining whether a bankruptcy consummation order bars the filing of a claim engaged in equitable balancing to reach its conclusion. Because the issue before this court did not require it to engage in equitable balancing, discovery on the issue of unreasonable delay is unnecessary.

IV.     Conclusion

For the foregoing reasons, BMC's Motion to Alter or Amend is DENIED.

AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge